IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT H. JACKSON, and ) | |
| ) | |
| LIFE FIRST, Inc., an Illinois Corporation ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 07 C 7216 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| James Martin, Regional Commissioner, ) | Honorable Judge Darrah |
| Dennis Davis, Area Director ) | |
| Vela Marshall, District Manager, ) | |
| and other unknown employees of the Social ) | |
| Security Administration ) | |
| ) | |
| Defendants. ) | |

PLAINTIFFS' RESPONSE AND MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO SUBSTITUTE AND DISMISS

Issues and Summary of Argument

1) Whether the de-certification of plaintiffs, that effectively puts them out of their ongoing business, is reviewable on a Fifth Amendment claim of deprivation of property?

2) Whether subject matter jurisdiction exists on such a claim?

3) Do the alleged "constitutional torts" survive the government's FRCP 12 (b) (1) and (6) misplaced arguments?

The government points to no language, whether derived from Congress or the agency that purports to prohibit judicial review of de-certification of representative payee status. Indeed, it is well-established that judicial review is presumed unless there is clear and convincing evidence to the contrary. And in any event the claim that Constitutional questions can be foreclosed from review is unprecedented. See e.g., <u>Johnson v. Robinson</u>, 415 U.S. 361, 366-67, 94 S. Ct. 1160, 1165-66, 39 L. Ed. 389 (1974), <u>Weinberger v. Salfi</u>,

1

422 U.S. at 761, 95 S. Ct. at 2464, <u>Matthews v Eldrige</u>, 424 U.S. 319 (1976). "Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions". <u>Califano v Sanders</u>, 430 U.S. 99, 109. (1977). Even in the non-constitutional context, "judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136, 140 (1967). (To similar effect, <u>Davis v Passman</u>, 442 U.S. 228 (1979), <u>Carlson v Green</u>, 446 U.S. 14 (1980), and <u>Bivens v Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971) ))

The government's false premise in their claim of unfettered administrative discretion in this case is about a "<u>request to be made</u>"[1] representative payee. (emphasis added) This "application" premise is fatal to the government's argument.

This case is not about *application* for licensure, mandamus on an *application*, or liquor license *application*[2]. This case is about de-certification of plaintiffs' status as a representative payee and the destruction of their ongoing business which was built upon and sustained by their certification by the Social Security Administration.

Statement of Facts

The plaintiffs built an ongoing business based upon their certification and served as certified representative payees in the Social Security Administration's distribution of entitlement benefits to designated classes of individuals. On an annual basis, the plaintiffs represented a client base of at least 80 clients per year. Each client required the submission and approval of a separate and individual application for appointment as a representative payee.

---

[1] Page 3, Government's Memorandum.

[2] <u>Maldanado v. Commissioner of Social Security,</u> 182 F. Supp. 2d 216 (D. Puerto Rico 2002) mandamus action on denial of application, <u>Scott v. Village of Kewaskum,</u> 786 F. 2d 338 7th Cir. 2004), liquor license application

In September 2005, an occasional SSA audit was conducted, and certain paperwork deficiencies were noted. A letter of determination was forwarded to the plaintiffs, and a meeting was scheduled with the SSA to comply with the deficiencies and respond to any outstanding questions. On December 23, 2005, a second letter was sent to the plaintiffs repeating the previously addressed deficiencies.

The plaintiffs attempted repeatedly to contact authorized representatives of the SSA, including Dennis Davis, Area Director and James Martin, Regional Director, to review the gross errors of the meeting of December 8, 2005, and the resulting clandestine and arbitrary decertification of the plaintiffs, without due process or notice. <u>Plaintiffs were denied the opportunity to be heard or otherwise ignored by the employees of the SSA.</u> (Complaint ¶ 59, 60). Plaintiffs were later informed they have no right of appeal.

<u>Argument</u>

Introduction

The property[3] interest held by the plaintiff's, and stripped from them, without a modicum of process that was due, falls within the analysis of <u>Scott v. Kewaskum</u>, 786 F. 2d 338 (7th cir. 1986), where it discusses what is <u>not</u> property. "The Scotts' wish to have a license is not 'property.' To have a property interest in a benefit, person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement." <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972), <u>Scott</u> at 339.

---

[3] For purposes of due process, "property" under Illinois law, in its broadest and most inclusive sense includes every interest anyone may have in any and everything that is subject of ownership by human beings, together with right to freely possess, use, enjoy, or dispose of same. <u>Magnuson v Cassarella</u>, 812 F. Supp 824 (N.D. Ill. 1992) referring to <u>Davis v Attic Club</u>, 56 Ill. App. 3d 58, 66-67, 371 N.E. 2d 903 (1st Dist 1977).

3

Here we have a legitimate claim of entitlement because the plaintiffs are certified representative payees: this is <u>not</u> "abstract"; this is <u>not</u> a "unilateral expectation". The plaintiffs have not only articulated a clear property interest, but also a liberty interest.[4]

Whether or not due process attaches to an *application* is not relevant to the decision before this court, thus the cases upon which the government principally relies are completely inapposite to a situation where the government has "taken" plaintiffs' livelihood.

---

[4] <u>Medley v City of Milwaukee</u>, 969 F. 2d 312 (7th Cir. 1992), is an absolute roadmap to a claim of deprivation of liberty interest, since in the instant case SSA destroyed plaintiffs' business and sent defamatory and derogatory information to third parties (plaintiffs' clients). The Seventh Circuit in <u>Medley</u> offers its explanation in its extended discussion of Liberty Interest asserting: "The district court cited <u>Scott v Kewaskum</u>, 786 F. 2d 338, 340-41 (7th Cir. 1986), for its holding, wherein we defined "liberty" as that which "generally includes human abilities that do not depend on the government – freedom from restraint, the right to associate with others, the right to travel, and more important here the right 'to work for a living in the common occupation of the community.' "Id. At 340 (citation omitted). But we did not define interest as narrowly as the defendants would wish so as to limit them to governmental acts preventing a person from engaging in a common occupation of the community. Had we done so, we would be holding contrary to the Supreme Court's broad definition of liberty interests in <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972), where the Supreme Court included "the right of the individual to contract" within its description of what constitutes a liberty interest. In rejecting Roth's liberty interest claim, the Supreme Court noted that if this case had involved allegations implicating his reputation, honor or integrity, the result might have been different. Subsequent cases have held that there is a liberty interest in not being barred from bidding on government contracts or seeking governmental employment when the basis of the bar is misconduct which in turn affects the reputation of the person or entity involved, and the bar may substantially affect future employment or contracting opportunities. *See* <u>Larry v. Lawler</u>, 605 F. 2d 954 (7th Cir. 1978); <u>Old Dominion Dairy Products, Inc. v. Secretary of Defense</u>, 631 F. 2d 953 (D.C. Cir. 1980)."

4

No case cited by the government stands for the proposition that judicial review of administrative actions Is unavailable, where those actions deprive a person of property; in other words, no case cited by the government affirms the unsupported notion that a certification may by stripped without regard for the Fifth Amendment of the Constitution.[5]

The government's attempt to oust subject matter jurisdiction of Federal Courts is flawed at best. The plaintiffs served as certified representative payees in the SSA's scheme of distribution of entitlement benefits to designated and identified classes of individuals. The plaintiffs, an Illinois resident and an Illinois Corporation, have exhausted all administrative remedies afforded them and denied them by the Social Security Administration.  The government misstates the claim filed before this court. The plaintiff's have stated they are not filing a claim as a recipient of social security benefits.

1.   Jurisdiction over Decision to Revoke Designated Payee Status

This case presents two distinct claims: 1) In the review of Social Security de-certification, whether or not due process was provided: if not, their practice must be reversed; 2) the claim for monetary damages arising from the wrongful de-certification is subject to an FTCA or "*Bivens*"[6] remedy.

Due process guarantees attach to the plaintiffs' property interest given their certification as representative payee. It is the sum and substance of the plaintiff's business. It is property in its most

---

[5] The Fifth Amendment provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law ..." In numerous decisions, this Court "has held that the Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws. E. g., *Hampton v. Mow Sun Wong*, 426 U.S. 88, 100 (1976); *Buckley v. Valeo*, 424 U.S. 1, 93 (1976); *Weinberger v. Wiesenfeld,* 420 U.S. 636, 638 n. 2 (1975); *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954)." *Vance v. Bradley*, 440 U.S. 93, 95 n. 1 (1979). "To withstand scrutiny under the equal protection component of the Fifth Amendment's Due Process Clause, `classifications by gender must serve important governmental objectives and must be [442 U.S. 228, 235]   substantially related to achievement of those objectives.*' Craig v. Boren*, 429 U.S. 190, 197 (1976)." 9 *Califano v. Webster*, 430 U.S. 313, 316 -317 (1977). The equal protection component of the Due Process Clause thus confers on petitioner a federal constitutional right to be free from gender discrimination which cannot meet these requirements. *Davis v Passman, 442* U.S. 228, 236.

[6] *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

5

fundamental and basic form. Certification is property. De-certification is the stripping away of that property right, and subject to review under the Fifth Amendment guarantees.

Life First, Inc. does not concede its right to judicial review of the denial of its property right and the denial of due process, especially where the government misstates and misunderstands the nature of this case. Again, Life First, Inc. is not attempting *to be made* a representative payee, as argued in error by the government, but steadfastly Life First, Inc. preserves that the denial of due process in the SSA assertion that they are not subject to administrative review, but as previously stated: "Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions. . . the availability of judicial review is presumed, and we will not read a statutory scheme to take the "extraordinary" step of foreclosing jurisdiction unless Congress' intent to do so is manifested by 'clear and convincing' evidence." *Califano v. Sanders,* 430 U.S. at 109.

The function and purpose of the representative payee is an integral part of the delivery system used by the SSA to assure that the checks distributed are properly delivered to the entitled beneficiaries. The representative payee protects the SSA and protects the beneficiary. The SSA recognizes that the representative payee plays an important part in their process and further has established a payment for services to the representative payee that he is entitled to charge.[7] The nature of this "qualified" employer-

---

[7] Social Security Administration Guide for Organizational Representative Payees

Fee Amounts : Effective December 2007, the monthly fee for payee services is the lesser of 10% of the combined Social Security and SSI monthly payment or $35.00. For individuals with a DAA condition, the monthly fee is the lesser of 10% of the monthly payment or $68.00. *SSA must authorize the higher fee.* The dollar limit on the fee a qualified organization can collect may be increased in December by the same percentage as the Cost-of-Living Adjustment (COLA). An increased fee may first be collected from the check paid in January.

A fee may not be collected if any of the following apply:

- The beneficiary doesn't receive a payment in the month;

6

employee status is simply stated; the representative payee delivers the checks to the beneficiary for the SSA and oversees expenditures.

At issue is whether or not the SSA can deny an aggrieved party, the representative payee, the right to pursue judicial review of agency actions. Once certified, is decertification reviewable? How can it not be, unless agency regulations could possibly trump the Constitution?  Here, the regulations do not attempt that, even though the government claims so.

A representative payees' "property" interest in client fee payments for services provided was created and defined by the SSA. The representative payee's interest in their status and certification was created by the terms of their appointment.  The certification and appointment secured their interest in their contractual relationship and business relationships with their clients throughout the tenure of the clients eligibility for entitlements and benefits from the SSA.

The plaintiffs had a property interest sufficient to require the SSA to give them a hearing when the arbitrary and capricious actions were taken by its employees to decertify them as a representative payee, disqualify them and effectively void all of their contractual relationships with their clients.

It is the purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.  It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

---

- Your organization receives compensation, including guardianship fees, for performing representative payee services from another source; Your organization did not provide payee services for the month;
- We have determined that you have misused a beneficiary's funds; or
- You serve less than five beneficiaries.

Current payments may not be used to collect fees for past months. In addition, a beneficiary's conserved funds (checking/saving account, bonds, etc.) or an institutionalized beneficiary's personal needs funds cannot be used to pay fees for payee services.

2. Due Process Violation

The plaintiffs complaint at ¶ 59, 60, *inter alia*, specifically recounts the government's failure and refusal to grant the plaintiffs an opportunity to be heard, and the ongoing posture of ignoring all relevant and pertinent information submitted by the plaintiffs. The structure of the applicable regulations does not provide them with a hearing or other meaningful opportunity to be heard. A cause of action and damages remedy can be implied directly under the Constitution when the Due Process Clause of the Fifth Amendment is violated. *Bivens v Six Unknown Federal Narcotics Agents*, 403 U.S. 388; *Butz v Economou*, 438 U.S. 478. Pp 233-249.

Robert Jackson and Life First, Inc. are not applicants for certification or licensure; they are victimized by a revocation and injured by a decertification of their status, without due process. The plaintiffs are parties to contracts with their clients born of their certification and their entitlement to be paid for their services. The effect of decertification on the plaintiffs is the denial of their right to pursue their common occupation within their community: their right to make a living.

3. The United States is not the only Proper Defendant.

The issue is whether or not the government can limit the proper party defendants to an action, when they have sought to exclude the plaintiffs claim from FTCA review. A further issue is whether or not a *Bivens* claim is subject to the FTCA?

The request for hearing and the denial by the Regional Director represents compliance with the threshold requirements to bringing a complaint to district court. As parallel to FTCA requirements under Social Security Act § 205 – a final decision in a social security benefits case has two elements: 1) presentment of the claim to the Commissioner, and 2) complete exhaustion of administrative remedies. The claim presented to the Regional Director was for damages and not from a denial of benefits.

The review sought by the plaintiffs is unavoidably the result of wrongful government actions practiced by governmental officials in their official capacity, and other unknown social security employees. It is this

same predicate which yielded <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971). The wrongful actions of federal employees acting in their official capacities is recognized as a basis for the crafting of a remedy for the wrongfully harmed plaintiffs under a theory of violation of a constitutional right granted by the 5th Amendment, without substitution of the government for the parties. As stated in ¶ 10 of the plaintiffs' complaint: "Business expectancies are property to be protected from unjustified interference. The 5th Amendment of the United States Constitution protects the individual from deprivation of life, liberty or property without due process of law."

4.   FTCA Jurisdiction

Congress has remained silent as to the de-certification remedies available to the representative payee.

<u>Hamrick v Franklin</u> is distinguishable from the instant case on the factual predicate and procedural exclusions as practiced and advanced by the Social Security Administration, where the SSA states that the plaintiffs have no administrative remedy recognizable under the Social Security Act and the threshold as their entrée to filing a claim under the FTCA. Where their remedy is deemed futile they have no remedy.

The plaintiff notified and filed directly with the Regional Director his claim for damages based upon the calculated actions of employees of the SSA, acting within the scope of their responsibilities designed to deny him his rights and based upon the revocation of his status and designation as a representative payee.( Complaint ¶ 11). It is a component of the benefits administration and distribution system employed by the SSA that a benefit recipient, may require the appointment of a designated payee, and the SSA at the point of the issuance of the beneficiaries entitlement check, distributes it to the representative payee, who is entrusted and responsible for the distribution of the payments to the designated recipient.

The issue remains clear and un-rebutted that the injuries suffered by the plaintiff are directly and exclusively the result of the arbitrary and capricious actions of the employees of the SSA.

It is also clear and un-rebutted that the SSA denies to a designated class of "representative payees" any recourse for the arbitrary actions of the employees of the SSA. Procedurally, the SSA demands,

requires and records a contractual agreement before an individual representative payee is certified. It is based upon this registration that the SSA then issues entitlement benefits, as part of its safe-guarding that the beneficiary receives his payments. The SSA recognizes and enforces this agreement in its issuance of benefits to the representative payee.

The regional director's letter of February 14, 2006 specifically denies the plaintiffs any right to due process in its declaration "that you have no rights of appeal." (Complaint Exhibit b)

Through amendments made to the Social Security Act, Congress described the process used to designate representative payees and specified procedure available to challenge such designation.

It is a recognized component of the benefits administration and distribution system employed by the SSA that a benefit recipient requires the appointment of a designated payee, and the SSA at the point of the issuance of the beneficiaries entitlement check, distributes it to the representative payee, who is entrusted and responsible for the distribution of the payments to the designated recipient.

It is futile for the plaintiff to pursue formal filings of claims under the FTCA certification, where he is excluded, *ab initio,* as a person or party with standing to bring an FTCA claim. Standing is the bar to recovery under the FTCA.

<u>Conclusion</u>

The government's motion to dismiss should be denied where the court finds: 1) the plaintiffs have a property right and interest under the Fifth Amendment of the United States Constitution; 2) judicial review is proper when a federal question is presented for review; 3) the exhaustion of remedies under the federal Tort Claims Act is futile; 4) the tortious interference claims brought by the plaintiffs are a "constitutional tort", under <u>Bivens.</u>

Clearly, there is subject matter jurisdiction which requires denial of the FRCP 12 (b) (1) motion. Equally clear, the plaintiffs' have alleged "constitutional torts" which state a claim upon which relief can be granted, requiring denial of the FRCP 12 (b) (6) motion.

Respectfully submitted,

_____

Leslie J. Starks
Attorney at Law
Illinois Attorney Registration 03126420
1516 East 65th Place #2
Chicago, Illinois 60637-3847
773- 955-4881 – Voice
773- 955-4885 – Facsimile
StarksEsq @ aol.com – E-mail