HHN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT H. JACKSON<br>and LIFE FIRST, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br>JAMES MARTIN, Regional Commissioner,<br>DENNIS DAVIS, Area Director<br>VELA MARSHALL, District Manager,<br>and Other Unknown Employees of the<br>Social Security Administration,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   No. 07 CV 7216<br>)<br>)   Judge John W. Darrah<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Robert H. Jackson ("Jackson") and Life First, Inc. ("Life First"), filed suit against Defendants – the United States of America; James Martin, Regional Commissioner; Dennis Davis, Area Director; Vela Marshall, District Manager; and other unknown employees of the Social Security Administration ("SSA") – asserting five causes of action. Plaintiffs seek: a declaratory judgment that they do not owe the SSA a refund for misuse of funds (Count I), a declaratory judgment that they were deprived of property or liberty without due process (Count II), injunctive relief for the due process violation (Count III), damages due to tortious interference with business expectancies (Count IV), and damages due to tortious interference with contract (Count V). Pending before this Court is Defendants' Motion to Dismiss Plaintiffs' Complaint in its entirety for lack of subject-matter jurisdiction.

## BACKGROUND

A reading of Plaintiffs' Complaint supports the following summary of the alleged conduct of the parties.

Life First is a registered Illinois 501(c)(3) corporation whose principal is Jackson. Life First represented its clients by entering into contracts with them to collect Social Security benefits on their behalf for a fee. The SSA labels the party who receives benefits for another a "representative payee." Sometime in 2000 Life First became the representative payee for about eighty qualified individuals who were receiving Social Security benefits. Life First was registered with the SSA to be the representative payee for its clients and received benefit checks from the SSA. Life First charged between $33.00 and $64.00 per month, depending on the classification of the client. Life First deposited client funds in a non-interest bearing account in the name of Robert H. Jackson.

During an audit of Life First's accounts in September 2005, the SSA determined that Life First had misappropriated approximately $259,090 of the funds paid to it on behalf of its clients. The SSA sent a letter to Life First on November 15, 2005, notifying Plaintiffs of the deficiency. On December 8, 2005, a hearing was held at the SSA office at 5130 W. North Avenue, Chicago, Illinois. Jackson attended this hearing and presented documentation to rebut the SSA's charge of misuse of funds. The hearing was chaired by Vela Marshall ("Marshall"), District Manager for the North Avenue SSA office. Prior to this appeal hearing, however, the SSA notified all of Life First's clients that neither Life First nor Robert H. Jackson would be permitted to represent them regarding their benefits.

On December 23, 2005, Regional SSA Commissioner James F. Martin ("Martin") sent Life First a letter, notifying them of the SSA's determination to uphold the audit findings. The letter informed Life First that it had to repay the $259,090 in misused funds and that Life First was no longer allowed to act as representative payee for its clients. The SSA determined that Life First had not been authorized to collect fees on behalf of its clients as it had been doing; that determination led to a charge of $96,296 in misused funds. The SSA also determined that because Life First had not accounted for transfers out of the beneficiaries' collective checking account totaling $162,794, this amount was also misused and had to be refunded to the SSA. The December 23 letter also stated that if Life First disagreed with the decision, it had thirty days notify the SSA and to provide proof, showing that the benefits had been used properly.

On January 21, 2006, Life First's attorney, Leslie Starks ("Starks"), sent a letter to Martin, requesting an appeal of the SSA's revocation of Plaintiffs' payee status. Martin responded to Starks in a letter dated February 14, 2006, notifying Starks that the determination that Life First could no longer serve as representative payee for their clients was not appealable. While refusing to meet personally with Starks, Martin's letter notified Starks that Life First may submit evidence to rebut the SSA's misuse determination at a field office of their choice.

The denial of Life First's status as representative payee destroyed Plaintiffs' business and caused financial damages in excess of $250,000. On December 26, 2007 Plaintiffs filed the present suit, alleging five Counts against the United States and officials of the SSA.[1]

---

[1] On March 19, 2008, this Court granted Defendants' motion to substitute the United States as Defendant in place of the individually named SSA officers with respect to the Federal Tort Claims Act claims in Counts IV and V.

3

## LEGAL STANDARD

In deciding on a motion to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the petitioner. *Alicea-Hernandez v. The Catholic Bishop of Chicago*, 320 F.3d 698, 701 (7th Cir. 2003). Documents referenced in a complaint, which are central to a claim, along with any matters of public record, may be considered on a motion to dismiss. *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002). Consideration of evidence outside of the pleadings, for purposes of ruling on a motion to dismiss for lack of subject-matter jurisdiction, will not convert the motion attacking federal jurisdiction into one for summary judgment. *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993).

## ANALYSIS

As a threshold matter, Plaintiffs' Complaint is unclear in what capacity they are suing the SSA officials. Plaintiffs are suing the SSA officials in their official capacity, as the Complaint states that the individuals are "employees of the [SSA], acting in their official capacities." With regard to suits against Defendants in their individual capacity, however, the Complaint twice refers to the Defendants ambiguously as "individually and collectively." Because the word "individually" was invoked, individual capacity claims will be analyzed. In order to sue a government official in his individual capacity, the official must be served under Rule 4(e), 4(f), or 4(g), in the same manner as any other individual. *Robinson v. Turner*, 15 F.3d 82, 85 (7th Cir. 1994) (*Robinson*). Actual knowledge that a lawsuit exists is insufficient for conferring personal jurisdiction over a defendant in lieu of valid service of process. *Mid-Continent Wood Products, Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991). Plaintiffs were on notice that they

had failed to properly acquire personal jurisdiction over the SSA officials sued in their individual capacity since at least March 12, 2008, when Defendants' Motion to Dismiss pointed out the lack of service. Unless a plaintiff can show good cause for why service was not made within the required 120-day period, the complaint will be dismissed without prejudice. Fed. R. Civ. P. 4(m); *Robinson*, 15 F.3d at 84. Plaintiffs have not argued nor shown good cause for the failure to serve. To the extent that the Complaint stated claims against the Defendants in their individual capacity, those claims are dismissed for failure to serve.

Defendants moved to substitute the United States as the proper defendant in lieu of the individual SSA officials because the United States is the sole proper defendant for tort suits against government officials acting within the scope of their employment. 28 U.S.C. § 2679(b); *United States v. Smith*, 499 U.S. 160, 165-66 (1991); *Apampa v. Layng*, 157 F.3d 1103, 1104 (7th Cir. 1998) (*Apampa*) (suing the United States under the FTCA is the exclusive remedy for most *non-constitutional* torts by government officials) (emphasis added). Pursuant to regulations, the Attorney General's delegate certified that the individual SSA officials were acting within the scope of their employment when the events at issue occurred. 28 C.F.R. § 15.3. This court granted Defendants' Motion to Substitute on March 19, 2008, substituting the United States as Defendant in place of the individual SSA officials. This substitution is only in regard to Plaintiffs' non-constitutional tort claims against the individual Defendants (Counts IV and V). SSA officials remain Defendants for Counts I, II, & III in their official capacities.

Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, that Plaintiffs do not owe the SSA $259,090.00 in misused funds (Count I). Defendants respond that there is no judicial review over SSA determinations regarding representative-payee status. In subsequent briefs, both parties argue whether or not decertification of representative-payee status is

5

judicially reviewable; but neither party addresses the actual relief sought in Count I of Plaintiffs' Complaint: a declaratory judgment that Plaintiffs do not owe the SSA a refund.

The SSA's determination whether or not an overpayment must be repaid is an initial decision subject to judicial review. 20 C.F.R. §§ 404.902, 416.1402; *Monet v. Mathews*, 535 F. Supp. 2d 132, 134 (D.D.C. 2008); *Scott v. Commissioner of Social Security Admin.*, 2002 WL 31164581, *6 (N.D.N.Y. 2002). Although the "Act itself does not expressly provide a cause of action to recover overpayments from a representative payee . . . where a statute provides for payments to a beneficiary's representative, the court may reasonably infer that Congress intended for recovery from that representative of any overpayments." *Corr for Corr v. Sullivan*, 725 F. Supp. 413, 414 (N.D.Ind. 1989). The Act channels all legal challenges through the Agency and goes beyond the ordinary exhaustion requirements pertaining to judicial review of administrative actions. 42 U.S.C. § 405(b), (g), and (h); *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13-14 (2000) (*Shalala*). The next stage in administrative review after receiving an adverse initial decision is to request a reconsideration determination. 42 U.S.C. § 405(b); *Mathews v. Eldridge*, 424 U.S. 319, 327-29 (1976) (*Mathews*). Plaintiffs must exhaust administrative remedies before proceeding to federal court. *Mathews*, 424 U.S. at 327-29; *Ancillary Affiliated Health Services, Inc. v. Shalala*, 165 F.3d 1069, 1070-71 (7th Cir. 1998).

Plaintiffs have not pled nor shown that they have filed a request for reconsideration with the SSA, challenging the misused funds determination. Absent any showing that Plaintiffs filed a request for reconsideration, they have failed to exhaust their administrative remedies within the SSA; and, therefore, judicial review of their alleged misuse of funds is unavailable. Because the Declaratory Judgment Act, 28 U.S.C. § 2201, confers no additional subject-matter jurisdiction in

the federal courts, invoking that statute does not confer jurisdiction where it was lacking. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). The only other ground Plaintiffs assert as a basis for subject-matter jurisdiction over Count I is 28 U.S.C. § 1331. Section 405(h) of the Social Security Act, however, expressly prohibits any challenge to the SSA from being brought under § 1331. 42 U.S.C. § 405(h); *Shalala*, 529 U.S. at *10-11. Count I is dismissed for lack of subject-matter jurisdiction over Plaintiffs' request for a declaratory judgment.

Plaintiffs also allege that the SSA has revoked their status as representative payee without due process of law and seek a declaratory judgment (Count II) and an injunction (Count III) to remedy that deprivation. Neither the Social Security Act nor the regulations promulgated by the Commissioner authorize judicial review of representative-payee determinations, as these are discretionary decisions of the Commissioner. *See* 42 U.S.C. § 405(j)(1)(A) (providing that Commissioner may certify payment to a representative); 20 C.F.R. §§ 404.2050, 416.650 (stating the discretionary grounds for revoking one's status as a representative payee); *Kriegbaum v. Katz*, 909 F.2d 70, 74 (2d Cir. 1990) (only the SSA has the power to enforce the duties of a representative payee through the appointment of a new payee when the current payee misuses the funds); *Guzman v. Commissioner of Social Security*, 182 F. Supp. 2d 216, 219 (D. PR 2002) (*Guzman*) (finding that both the statute and the regulations make clear that the decision whether to appoint a representative payee is a discretionary function of the Commissioner).

Denial of a request to be made a representative payee may be reviewed by the SSA at its discretion; but it is not subject to mandatory administrative review, and it is not subject to judicial review. 20 C.F.R. §§ 404.903, 416.1403 (decisions not subject to administrative or judicial review "include, but are not limited to . . . [d]enying a request to be made a representative payee"). Administrative and judicial review of representative payee decisions are

7

only available to beneficiaries who are dissatisfied with the Commissioner's decision. 42 U.S.C. § § 405(j)(1)(E)(i), 1383(a)(2)(xi); 20 C.F.R. § § 404.2030(b), 416.630(b). By analogy, the revocation of certification as a representative payee is also a non-reviewable discretionary decision because the regulation provides that the list of non-reviewable actions "include[s], but [is] not limited to," the stated actions. 20 C.F.R. § § 404.903, 416.1403. The Commissioner's decisions to revoke Life First's status as representative-payee for its clients and to notify the Plaintiffs that they have misused SSA funds and that those funds must be repaid are discretionary SSA decisions not subject to judicial review.

However, to the extent that a statute or regulation precluded judicial review entirely, even in the face of alleged constitutional violations, such a statute or regulation itself would be constitutionally suspect. *See Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 681 (1986) (holding that judicial review exists for colorable constitutional claims against the SSA, despite the language of §405(h), unless the constitutional claim is frivolous or insubstantial). Therefore, Plaintiffs' constitutional claim must be examined to determine whether substantial constitutional issues exist. Plaintiffs originally claimed that only a property interest was implicated; but, in their Reply to Defendants' Motion to Dismiss, Plaintiffs asserted that a liberty interest was also implicated by the SSA's conduct. Although not included in their original Complaint, Plaintiffs' liberty interest argument will also be considered, as a party is not obliged to lay out a legal theory of recovery at the pleading stage. *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005).

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of life, liberty, or property without due process of law. U.S. CONST. Amend. V. In order for due-process protections to attach to liberty or property, there must be a

recognized liberty or property interest. *Mathews*, 424 U.S. at 332-334. When the protections of the clause attach, the process due turns on a balancing of three factors: (1) the private interest that will be affected by government action; (2) the risk of erroneous deprivation and the probable value of any additional or alternative safeguards; and (3) the Government's interest, which includes the fiscal and administrative burdens additional process would entail. *Mathews*, 424 U.S. at 335. It is instructive to consider the process that Life First received before its representative-payee status was revoked. Life First received written notice of deficiencies discovered during an audit, they were given a hearing where they could contest the misused-funds determination, and they received a final letter upholding the audit and revoking payee status.

In order for the protections of the Due Process Clause to attach to a deprivation of property, the person must have a recognized property interest. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70 (1972) (*Roth*). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577-78. Only the beneficiaries themselves have been deemed to have property interests in their government benefits, to which due-process protections attach. *See Goldberg v. Kelly*, 397 U.S. 254, 261-62 (1970) (holding that welfare benefits may not be terminated without a pre-deprivation hearing because they "are a matter of statutory entitlement for persons qualified to receive them"); *Mathews*, 424 U.S. at 332-33 (deciding that Social Security benefits may not be terminated without a pre-deprivation hearing because beneficiaries have a recognized property interest in continued receipt of such benefits); *Richardson v. Perales*, 402 U.S. 389, 398, (1971) (recognizing that applicants for Social Security disability benefits are

entitled to due process in the determination of their claims). Where, however, a request directed at government "appeals to discretion rather than to rules, there is no property." *Scott v. Village of Kewaskum*, 786 F.2d 338, 340 (7th Cir. 1986) (*Scott*). The SSA's denial of a request to be made a representative-payee is not appealable. *Guzman*, 182 F. Supp. 2d at 220. *See also Sena v. Roudebush*, 442 F.Supp. 153, 154 (D.C.N.M. 1977) (the analogous revocation of representative payee status for a veteran's pension does not implicate due process, where there is only a fiduciary relationship and not a property interest).

Plaintiffs point to no statute, regulation, or case that supports their proposition that a representative payee has a recognized property interest in being a representative payee. As the decision whether to certify or decertify someone a representative payee is discretionary and as the person so designated has no legitimate claim of entitlement to continued recognition as a payee, there is no recognized property interest implicated. Therefore, the protections of the Due Process Clause do not attach to Plaintiffs' alleged property deprivation.

Plaintiffs also asserted in their Response, for the first time, that their liberty has also been deprived without due process of law. "'Liberty' generally includes human abilities and aptitudes that do not depend on the government-freedom from restraint, the right to associate with others, the right to travel, and more important here the right 'to work for a living in the common occupations of the community.'" *Scott*, 786 F.2d at 340. "A transaction that the state may outlaw . . . is not a common occupation." *Scott*, 786 F.2d at 341. Once a state "reverses the presumption of free entry, it diminishes or extinguishes the liberty interest each person has in pursuing that occupation. *Scott*, 786 F.2d at 341. The Seventh Circuit has found the following to be "common occupations of the community": attorney, police officer, physician, nurse, psychologist, school teacher, and real estate agent. *Becker v. Illinois Real Estate Admin. and*

*Disciplinary Bd.*, 884 F.2d 955, 957 (7th Cir. 1989). In contrast, obtaining a liquor license in order to operate a tavern is not a common occupation. *Scott*, 786 F.2d at 341. Analogous to the case at bar, landlords do not have a liberty interest in participating in a federally funded rent assistance program. *Medley v. City of Milwaukee*, 969 F.2d 312, 318 (7th Cir. 1992) (*Medley*). In rejecting the landlord's challenge to being debarred from the program, the *Medley* court distinguished cases where the deprivation entailed a contract or employment with government. *Medley*, 969 F.2d at 317. The plaintiff in *Medley* claimed a liberty interest in continued involvement in a program that assisted third parties in obtaining housing, but the court noted that the plaintiff had not cited any cases supporting the assertion that a fiduciary has a liberty interest in the benefits of a third party. *Medley*, 969 F.2d at 317.

Whether or not someone is designated as a representative payee is solely at the discretion of the SSA Commissioner and, therefore, cannot be said to be a common occupation of the community. Being a representative payee is more like a landlord receiving rent assistance or a tavern owner seeking a liquor license than obtaining a license for a professional occupation such as a lawyer or physician. Therefore, there is no recognized liberty interest in Plaintiffs' status as former representative payees. Absent a property or liberty interest, the protections of the Due Process Clause do not apply. Because there is no colorable constitutional claim, there is no reason to depart from the regulatory scheme set out by Congress and the SSA: federal courts lack subject-matter jurisdiction over representative-payee determinations. Counts II and III are, therefore, dismissed.

Defendants claim that subject-matter jurisdiction is also lacking with respect to Plaintiffs' tort claims brought under the FTCA either (1) for failure to exhaust administrative remedies; or, (2) because the type of tort claims brought by Plaintiffs are specifically barred by the FTCA.[2] The FTCA requires exhaustion of administrative remedies before a plaintiff may bring a tort claim against the federal government or its employees to federal court. 28 U.S.C. § 2675(a). *See McNeil v. United States*, 508 U.S. 106, 112 (1993) (holding the exhaustion requirement in § 2675(a) to be unambiguous and noting that the "most natural reading of the statute indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process"); *Deloria v. Veterans Admin.*, 927 F.2d 1009, 1011 (7th Cir. 1991) (satisfying § 2675(a)'s exhaustion requirement is a "jurisdictional prerequisite" to initiating a suit in federal court). Further, a tort claim against the United States will be permanently barred "unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). An FTCA claim must be filed on a Form 95 "or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury . . . alleged to have occurred by reason of the incident." 28 C.F.R. § 14.2(a).

Plaintiffs assert that they have exhausted their administrative review options and should be allowed to proceed in federal court on their FTCA claims because either: (1) they did file a claim with the SSA, which was ignored; or (2) any attempt to pursue administrative remedies within the SSA will be futile. Plaintifs assert in their Complaint that they "sought" to file a claim with the SSA but that "it was left without action by the agency for more than six months." No

---

[2] In their Response to Defendants' Motion to Dismiss, Plaintiffs assert for the first time that jurisdiction is also available under *Bivens* to pursue damages for the SSA's alleged torts. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, (1971) (*Bivens*). Because this claim was not presented in Plaintiffs' Complaint, and because Plaintiffs have not moved to amend their Complaint, their *Bivens* argument will not be addressed. Even if a *Bivens* claim had been properly pled, however, such claims can only be heard against federal officials in their individual capacity, *Kaba v. Stepp*, 458 F.3d 678, 687 (7th Cir. 2006), and Defendants have not been sued in their individual capacities.

12

copy of such a claim was included with Plaintiffs' Complaint or Response, while Defendants have provided an affidavit from an SSA official, attesting to the fact that neither Plaintiff has filed a tort claim with the SSA as of February 19, 2008. Plaintiffs' argument that pursuit of an administrative claim would be futile, and implicitly that the exhaustion requirement should be waived, is unavailing. Section 2675(a) does not provide waiving the exhaustion requirement on grounds of futility. The statutory language is unambiguous and controlling: without exhaustion there is no federal-court jurisdiction over the tort claims. As Plaintiffs did not exhaust their administrative remedies under the FTCA, their tortious interference claims are barred from federal court for lack of subject-matter jurisdiction. Counts IV and V are dismissed for lack of subject-matter jurisdiction.

Even if Plaintiffs are deemed to have exhausted administrative review with respect to their tortious interference claims under the FTCA, such claims are specifically barred by the FTCA itself. *See* 28 U.S.C. § 2680(h) (barring claims arising out of interference with contract rights); *Hamrick v. Franklin*, 931 F.2d 1209, 1212 (7th Cir. 1991) (noting that the government's defense to interference with contract claims brought under the FTCA is provided by § 2680(h)). Therefore, even if Plaintiffs could overcome the exhaustion hurdle, they cannot overcome the clear message of § 2680(h): the federal government has explicitly chosen to retain sovereign immunity against claims that it or its employees have tortiously interfered with a contract. Counts IV and V are dismissed for lack of subject-matter jurisdiction.

## CONCLUSION

For the foregoing reasons, all five counts of Plaintiffs' Complaint are dismissed.

Dated: August 21, 2008

JOHN W. DARRAH
Unites States District Court Judge